STATE OF NEW JERSEY, EX REL. CHARLES WITTKOP. RELATOR, v. SAMUEL G. GARNER, INSPECTOR OF BUILDINGS OF THE TOWN OF BLOOMFIELD, AND THE TOWN OF BLOOMFIELD, IN THE COUNTY OF ESSEX, RESPONDENTS.

Argued October 7, 1925—Decided March 6, 1926.

**Zoning—Garages—Building Ordinances—Construction Within Two Hundred Feet of Parochial School—Ordinance Provided That "No Garage for Other Than Private Use of Owner or Occupant Should be Erected," &c.—Held, That Garages Erected for Renting to Private Occupants Are Not Within the Restriction of the Ordinance—Ordinances in Derogation of the Untrammeled Use of Private Property Will be Construed With Strictness.**

On rule to show cause why *mandamus* should not issue.

Before Justices TRENCHARD, KATZENBACH and LLOYD.

For the relator, *J. Harry Hull.*

For the respondents, *Raymond F. Davis.*

PER CURIAM.

Charles Wittkop, the relator, is the owner of a tract of land in the rear of a lot fronting Bloomfield avenue, in the town of Bloomfield. As such owner he planned to construct forty-five separate and individual garages to be occupied by individual tenants. In each garage but one car was to be kept, and no gasoline or other oils were to be kept except only the gasoline contained in the particular car. The relator applied to the respondent Garner, inspector of buildings, for a building permit to erect the proposed garages, and the latter failed to act. Relator then, on March 1st, 1924, applied to the town council for a permit, which body, after some delay, denied his application. A rule was thereupon granted against the respondents to show cause why a writ of *mandamus* or an

alternative writ should not issue to compel the issuance of the desired permit.

The refusal of the application by the council was based on a zoning ordinance adopted May 14th, 1923. The ordinance in question, in its pertinent part, reads:

"No public garage or service station and no private garage for other than the private use of the owner or occupant of the premises upon which it stands shall be hereafter erected within a distance of two hundred feet from any public, parochial or private school, college, seminary, church, hospital, public library, day nursery or public building."

In the early summer of 1924 the Sacred Heart Roman Catholic Church erected a parish house on Bloomfield avenue, two wings of which are used as a parochial school, while other portions of the building contain an auditorium, pool rooms and bowling alleys. The part of the school nearest to the garages, if the latter are erected, will be sixty feet distant, but the properties are separated by a bowling alley forty-five feet wide and a vacant lot fifteen feet in width.

If the ordinance is a valid exercise of the police power, and if it applies to the present situation, the permit for the construction was properly denied inasmuch as the proposed garages are within the two hundred feet of the parochial school prescribed by the ordinance. That it is a valid exercise of the police power is supported by the case of *Schait* v. *Senior*, 97 *N. J. L.* 390.

It is contended, however, by the relator that under any reasonable construction of the ordinance it is not applicable to the present case.

The record before us contains a stipulation of facts, and from this it appears that the section in which it is proposed to erect the garages is a highly mixed one of private dwellings, hotels, apartment-houses (the latter accommodating nearly two hundred families), and that there is already a block of thirty-seven garages and a gas filling station, as well as a bowling alley attached to a hotel in close proximity to the lot of the relator and to the school.

It is conceded by the respondents in the stipulation that there is *urgent need of garages* in this section of the town. In addition, however, to the stipulation it is clearly apparent that unless garages are constructed in large numbers many of the residents in this part of Bloomfield (a town of 31,000 persons) will either be deprived of the use of automobiles altogether or will be obliged to store cars at such distance from their homes as the town authorities would see fit to hold open for the construction of garages.

In the present stage of the automobile (no longer a luxury, but now a recognized necessity) and its uses, it will be assumed that the town council, when it adopted the ordinance of 1923, did so in view of the necessities of its people, and that it was not planning to defeat the very need which it now concedes to exist. There is at present a car to every seven inhabitants of the state, and it is fair to conclude that Bloomfield would at least avail itself of its full quota of such vehicles. This nearly approaches the proportion of a car to each family. To meet this condition many houses have now attached garages either on rear lots, on separate lots or as part of the dwellings themselves. With apartments, however, the situation is different. Unless accommodated in some such fashion as the one here contemplated, their tenants must be denied the privilege accorded to their more fortunate neighbors.

Looking at the ordinance in the situation as it stands we should not adopt a construction leading to this result except upon the plainest expression of intention. By its language the erection of garages is only forbidden for other than the private use of the owners or occupants in the localities named. The respondents contend that garages on owned land or in connection with rented residences are alone permitted. Such a construction would, as above stated, not only practically debar the use of cars by the numerous occupants of apartment-houses and the many others whose property would not permit of garage accommodation, but would be placing in the ordinance itself a purpose which we do not find expressed. The tenant of a garage who uses it to store his car is as much

an occupant of the garage as is one who occupies a rented dwelling and stores his car in a building on a rear lot. The definition of the word fully sustains this construction. Webster calls him "one who occupies or takes possession; one who has the actual use or possession." In a literal and legal sense the tenant of each individual garage will be the occupant of the premises (the lot or piece of land) on which it stands. If it were the intention to limit the construction of garages on lots of those who owned or rented dwellings it was the duty of the council to so declare in language that would clearly express this purpose. This the council has not done. The ordinance is in derogation of the untrammeled use of private property and should be construed with strictness.

Our conclusion is that the ordinance by its terms fails to prohibit the construction here contemplated, and that the permit applied for was wrongfully denied.

The facts being admitted a peremptory writ of *mandamus* will be awarded.